UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NANOELECTRO RESEARCH AND PRODUCTION CO., | * * * | |
| Petitioner, | * * | |
| v. | * * | Civil Action No. 17-cv-11378-ADB |
| ALPHYSICA INC., | * * | |
| Respondent. | * * | |

**MEMORANDUM AND ORDER ON MOTIONS
TO CONFIRM OR VACATE ARBITRATION AWARD**

BURROUGHS, D.J.

On September 24, 2014, the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation ("ICAC") issued an arbitration award in favor of Petitioner Nanoelectro Research and Production Co. against Respondent Alphysica Inc. in the amount of $263,236.50. Currently pending before the Court are (1) Petitioner's motion for confirmation of the foreign arbitration award pursuant to the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") [ECF No. 31]; and (2) Respondent's motion to vacate the arbitration award [ECF No. 30]. For the reasons that follow, Petitioner's motion is GRANTED and Respondent's motion is DENIED.

I.  BACKGROUND

In November 2017, the parties filed the pending cross-motions to confirm or vacate the arbitration award, accompanied by statements of material facts and supporting memoranda and exhibits. After reviewing the motion papers, on July 26, 2018, the Court held an evidentiary

hearing where both parties appeared through counsel. [ECF No. 49]. The following facts are culled from the parties' written submissions and the evidence presented at the hearing.

Petitioner and Respondent executed an Outsourcing Agreement dated November 24, 2011 in which the parties agreed to arbitrate before the ICAC any disputes arising out of or related to the agreement. [ECF No. 32 ¶ 1] ("Nano Facts"); see [ECF No. 33-1 at 5] ("Outsourcing Agreement"). Mr. Ilya Gornikel, Respondent's sole owner and officer, testified that he reviewed and signed the Outsourcing Agreement, which allowed Respondent to use Petitioner's superconductors in the production of Respondent's experimental magnetic systems.[1] The underlying arbitration arose out of Petitioner's claim that Respondent breached the Outsourcing Agreement by failing to obtain certificates validating Petitioner's superconductors. [ECF No. 33-2 at 2] ("Arbitration Award"). On September 22, 2014, the ICAC issued its decision requiring Respondent to pay to Petitioner $246,000 in contractual damages and $17,236.50 in fees. Nano Facts ¶ 2; Arbitration Award at 19. On July 26, 2017, Petitioner then filed the instant action with this Court seeking confirmation of the award. [ECF No. 1]. The central questions relevant to the confirmation of the award are (A) whether Respondent was provided proper notice of the arbitration and (B) whether Respondent had an adequate opportunity to present its case.

### A.   Notice of the Arbitration

On March 28, 2014, the ICAC sent Respondent a notice of the arbitration and enclosed Petitioner's statement of claim, both of which were delivered on March 31, 2014 by DHL. Nano Facts ¶ 3; Arbitration Award at 6. In accordance with the ICAC Arbitration Rules, the notice of arbitration and statement of claim were sent and delivered to the location listed in the

---

[1] Mr. Gornikel is also the owner of an American company, Alphysica Corp., as well as a German company, Alphysica GmbH, and a Russian company, Alphysica LLC.

Outsourcing Agreement as Respondent's notice address in Cambridge, Massachusetts. Outsourcing Agreement at 6; [ECF No. 39-1 at 1]; Arbitration Award at 6; Nano facts ¶ 12; [ECF No. 38 at 3]. On May 20, 2014, the ICAC sent a letter to Respondent's notice address stating that the arbitration hearing would take place on July 8, 2014. Nano Facts ¶ 5. DHL delivered that letter on May 23, 2014. Arbitration Award at 6; [ECF No. 39-1 at 2]. The ICAC sent a copy of the arbitration award to Respondent at its notice address on September 22, 2014, which was delivered by DHL on October 6, 2014. Nano Facts ¶ 7; [ECF No. 39-1 at 3]. Petitioner also sent the arbitration award to Respondent's notice address on November 15, 2016, and DHL delivered it on November 17, 2016. Nano Facts ¶ 9; [ECF No. 39-1 at 7].

In opposing the motion to confirm the arbitration award, Mr. Gornikel attests that Respondent "did not receive notice of the arbitration before [the ICAC] from the tribunal or from [Petitioner]." [ECF No. 39 at ¶ 3] ("Gornikel Aff."). All of the DHL deliveries to Respondent's notice address were "signed for by individuals named Kling, Brown, Smith, and Murray," but, according to Mr. Gornikel, Respondent "does not and did not have any employees, officers, or other agents with any of these names."[2] Id. ¶ 5. He further avers that Respondent only received notice of the arbitration award when it was served with the summons and complaint in this lawsuit. Id. ¶ 4. At the evidentiary hearing, Mr. Gornikel testified that he did not have knowledge of the arbitration until 2016.

---

[2] According to Mr. Gornikel, he designated the Cambridge office as Respondent's notice address under the Outsourcing Agreement, and that location has been Respondent's office throughout the relevant time period. Mr. Gornikel further testified that Respondent has never hired any employees and that he himself has always been the sole owner, officer, and director of Respondent.

### B.     Respondent's Representation at the Arbitration

The arbitrator's written decision reflects that attorneys Anna Aleskseevna Burdina and Anastasia Mikhaylovna Malyshevskaya appeared on behalf of Respondent at the arbitration pursuant to a Power of Attorney dated May 20, 2014. Arbitration Award at 1. According to the arbitrator's written decision, these attorneys presented the Respondent's case as follows:

> [O]n the date the oral hearings were held . . . with respect to the aforementioned case the [Respondent] filed its written comments with the Arbitration Court (the "[Respondent's] Written Comments"), whereby the [Respondent] asserted that it performed its obligations under the [Outsourcing Agreement] as appropriate in full. In particular, it stated that as soon as the [Outsourcing Agreement] was duly performed the [Respondent] obtained certificates [from] . . . laboratories duly certified by the American Society of Testing and Materials and approved by the [Petitioner] pursuant to Clause 1.2.1 of the [Outsourcing Agreement] for certification purposes. According to the [Respondent] the foregoing certificates were issued in strict compliance with the [Outsourcing Agreement].
>
> There was a reference in the [Respondent's] Written Comments to the fact that the case file included no evidence as to non-compliance of the aforesaid certificates made available by the [Respondent] to the [Petitioner] with [the] terms and conditions of the [Outsourcing Agreement].
>
> In view of the foregoing (in the [Respondent's] opinion) the claim for termination of the [Outsourcing Agreement] and repayment of funds raised by the [Petitioner] should not be made subject to satisfaction. Moreover, the [Respondent] noted that in view of the principle of party autonomy the Parties agreed in Clause 6.2 of the [Outsourcing Agreement] to submit to international law. According to the [Respondent] this provision of the [Outsourcing Agreement] made it uncertain what law had to be applied when resolving any dispute arising from or otherwise related to the [contract]. As such, the [Respondent] declared the clause having regard to applicable law null and void due to enforceability thereof.
>
> The [Respondent] also emphasized that the [Petitioner] failed to refer to substantive law and terms and conditions of the [Outsourcing Agreement] in its pleading in order to establish its claims, thus preventing the [Respondent] from presenting its own case. In view of the foregoing the [Respondent] in its Written Comments asked the Arbitration Court to consider the issue related to the law that should be applied within the dispute resolution procedure and grant it time required to present its own case based on the resolution passed with respect to applicable law.

Arbitration Award at 7–8. Ms. Burdina and Ms. Malyshevskaya further "resisted the arguments made by the [Petitioner's] representatives as to the applicability of the Russian substantive law to this particular dispute. The [Respondent's] representatives stated that a reference made in Clause 6.2 of the [Outsourcing Agreement] to applicability of international law certified that the Parties failed to agree upon applicable law." Id. at 8. Moreover:

> When resisting the [Petitioner's] arguments, the [Respondent's] representatives asserted that [certain test data] did represent a certificate of conformity the [Respondent] was liable to make available to the [Petitioner] as provided by the [Outsourcing Agreement]. The [Respondent's] representatives noted that it was the first time the Parties made such a transaction, thus as of the date of execution of the [Outsourcing Agreement] they had no idea what form a certificate of conformity had to be made in. Since the Parties failed to agree upon the form of the aforesaid certificate of conformity, then according to the [Respondent's] representatives the term "certificate" used in the [Outsourcing Agreement] should be construed nominally. The [Respondent's] representatives as well emphasized that the [test data] was made available to the [Petitioner] as attachments to e-mail messages of August 22 and August 28, 2013.

Arbitration Award at 9.

With regard to the appointment of Ms. Burdina and Ms. Malyshevskaya as Respondent's representatives at the arbitration, Respondent submitted into the record before this Court a Power of Attorney dated May 20, 2014 that was executed by Leo Ryzhenko on behalf of Alphysica Corp.[3] [ECF No. 39-2]; Nano Facts ¶ 4. Alphysica Corp. is a related entity to Respondent Alphysica, Inc., but is not a party to the Outsourcing Agreement or the subject of the underlying arbitration. Mr. Gornikel testified that he created Alphysica Corp. in 2006 or 2007 to negotiate contracts in the United States related to magnetic technology. After pivoting his focus to the European market, Mr. Gornikel created Alphysica Inc. to ship superconductors from manufacturers in Massachusetts and New York to Europe. According to a March 8, 2012 filing

---

[3] As discussed below, Mr. Ryzhenko was Alphysica Corp.'s agent for service of process in California [ECF No. 43-1], and an officer of Alphysica Corp. Gornikel Aff. ¶ 9.

with the California Secretary of State, Alphysica Corp.'s principal office is located at the same address as Respondent's notice address in Cambridge, Massachusetts. [ECF No. 43-1]. This filing with the California Secretary of State identifies Mr. Gornikel as the Chief Executive Officer, Chief Financial Officer, and Secretary of Alphysica Corp., and Mr. Ryzhenko as its registered agent. Id. Similarly, according to a filing with the Nevada Secretary of State (Alphysica Corp.'s state of incorporation), Mr. Gornikel was the President, Secretary, Treasurer, and Director of Alphysica Corp. for the period of February 2014 to February 2015, which covers the period of time when the power of attorney was executed and the arbitration was held. [ECF No. 45]. Mr. Gornikel testified that he was unaware that Mr. Ryzhenko, a former secretary of Alphysica Corp., signed the power of attorney and only saw it for the first time when it was produced in this litigation. Gornikel Aff. ¶¶ 9−10. According to Mr. Gornikel, Mr. Ryzhenko was never authorized to execute this power of attorney on behalf of Alphysica Corp. or Alphysica Inc.[4]

## II.   DISCUSSION

### A.   Confirmation of Foreign Arbitration Awards

The FAA, which implements the New York Convention, "allows for recognition and enforcement of foreign arbitral awards in district courts." Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC, 182 F. Supp. 3d 556, 563 (E.D. Va. 2016); see 9 U.S.C. § 203. ("An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United

---

[4] Mr. Gornikel testified that he last spoke to Mr. Ryzhenko in 2008 or 2009, but Petitioner submitted into the record a contract between Alphysica Corp. and Alphysica LLC dated October 21, 2011, which bears the signatures of Mr. Ryzhenko as the president of Alphysica Corp. and Mr. Gornikel as the general director of Respondent Alphysica Inc. Although Mr. Gornikel denied signing the contract, he acknowledged that the signature appeared to be his handwriting.

States . . . shall have original jurisdiction over such action or proceeding . . . ."). The New York Convention "broadly applies to 'arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought and arising out of differences between persons, whether physical or legal. It . . . also appl[ies] to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" Research & Dev. Ctr., 182 F. Supp. 3d at 563 (quoting New York Convention, Art. I.1). "Both the United States and the Russian Federation are signatories to the New York Convention." Id.

The New York Convention created a "strong public policy in favor of international arbitration [and] the party seeking to avoid summary confirmation of an arbitral award has the heavy burden of proving that one of the seven defenses [of the New York Convention] applies." Calbex Mineral Ltd. v. ACC Res. Co., L.P., 90 F. Supp. 3d 442, 457 (W.D. Pa. 2015) (quoting VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P., 717 F.3d 322, 325 (2d Cir. 2013)); see First State Ins. Co. v. Banco de Seguros Del Estado, 254 F.3d 354, 357 (1st Cir. 2001) ("The party opposing confirmation bears the burden of establishing . . . grounds barring confirmation of the arbitral award."); Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009) ("The burden is a heavy one, as the showing required to avoid summary confirmance is high." (quoting Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005))). "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Albtelecom SH.A v. UNIFI Commc'ns, Inc., No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017) (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO, 954 F.2d 794, 797 (2d Cir. 1992)).

7

Accordingly, the proceeding for confirmation of a foreign arbitration award is "summary . . . in nature" and "is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007). It is a "straightforward" proceeding "in which no other claims are to be adjudicated . . . . [T]he court properly may consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity." Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc., 965 F. Supp. 2d 308, 311 (S.D.N.Y. 2013) (quoting Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987)); see Calbex Mineral Ltd., 90 F. Supp. 3d at 457 (district court "must confirm the award unless one of the grounds for refusal specified in the [New York Convention] applies to the underlying award." (quoting Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 307–11 (3d Cir. 2006))).

"[T]he grounds for relief enumerated in Article V of the [New York Convention] are the only grounds available for setting aside an arbitral award." Yusuf Ahmed Alghanim & Sons W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997). In pertinent part, Article V provides that recognition and enforcement of the award may be refused only if the defendant furnishes proof that "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [his or her] case." Art. V(1)(b). The recognition and enforcement of an arbitral award may also be refused if doing so "would be contrary to the public policy of that country." Art. V(2)(b).

B. **Lack of Proper Notice**

Respondent first contends that the arbitration award should be vacated or refused because Respondent "did not receive notice of the arbitration, the selection of the arbitrators, or the

decision from either the ICAC or [Petitioner]." [ECF No. 37 at 5]. "To judge compliance with the New York Convention's 'proper notice' requirement, courts look to the forum's standards of due process." CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd. v. LUMOS LLC, 829 F.3d 1201, 1206 (10th Cir. 2016) (citing Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992)). Accordingly, "[n]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)); see Anhui Provincial Imp. & Exp. Corp. v. Hart Enter. Int'l, Inc., No. 96-cv-0128 (LAK), 1996 WL 229872, at *3 (S.D.N.Y. May 7, 1996) (with regard to proper notice, "[t]he core of due process is notice reasonably calculated to inform the respondent of the proceeding and an opportunity to be heard").

Here, the ICAC and Petitioner completed deliveries of the arbitration materials to Respondent at the notice address provided in the Outsourcing Agreement, which remains Respondent's principal office. "Courts have determined that notice satisfies due process concerns where it was the method of notice contractually stipulated to by both parties." Intel Capital (Cayman) Corp. v. Yi, No. 15-mc-50406, 2015 WL 7075954, at *3 (E.D. Mich. Nov. 13, 2015) (holding, in an action to confirm a foreign arbitration award, that notice of the commencement of the underlying arbitration proceedings was proper where the petitioner delivered the notice to the respondent's address listed on the applicable contract); see First State Ins. Co., 254 F.3d at 357 (use of "method chosen by the parties to receive notice . . . cannot be deemed to offend due process"); OOO FC Grand Capital v. Int'l Pharm. Servs. Ltd., No. 16-cv-6156 (JS)(SIL), 2017 WL 8813135, at *7 (E.D.N.Y. Dec. 15, 2017), report and recommendation adopted, No. 16-cv-6156(JS)(SIL), 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018) (attempted delivery of arbitration

materials to defendant at addresses listed in subject agreements was consistent with forum's standards of due process). Respondent does not dispute that the notices were delivered to its notice address listed in the Outsourcing Agreement. Even assuming that Mr. Gornikel did not himself receive actual notice, "[d]ue process does not require perfect or actual notice." Yukos Capital S.A.R.L. v. OAO Samaraneftegaz, 963 F. Supp. 2d 289, 297 (S.D.N.Y. 2013), aff'd sub nom. Yukos Capital S.A.R.L. v. Samaraneftegaz, 592 F. App'x 8 (2d Cir. 2014); Grp. 32 Dev. & Eng'g, Inc. v. GC Barnes Grp., LLC, No. 3:14-cv-2436-B, 2015 WL 144082, at *6 (N.D. Tex. Jan. 9, 2015) ("[D]ue process requirements are satisfied, and an arbitration award will not be vacated, if the affected parties are given either actual *or* constructive notice."). Because Respondent was provided multiple notices of the arbitration in accordance with the Outsourcing Agreement and the ICAC Arbitration Rules, Respondent has failed to establish a lack of proper notice sufficient to warrant vacating or refusing to confirm the arbitration award.

### C. Representation at the Arbitration

Respondent next asserts that the appointment of representatives, ostensibly on its behalf, at the arbitration through a power of attorney signed only by its affiliate effectively prevented Respondent from presenting its case, and that confirming the award under these circumstances would violate public policy. The public policy defense "is to be narrowly construed and should be accepted only when enforcement of the arbitration award would 'violate the forum state's most basic notion of morality and justice.'" In re Avraham & Shigur Express Ltd., No. 91-cv-1238 (SWK), 1991 WL 177633, at *2 (S.D.N.Y. Sept. 4, 1991) (quoting Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*,* 508 F.2d 969, 973–74 (2d Cir. 1974)); In re Waterside Ocean Nav. Co., Inc. & Int'l Nav. Ltd., 737 F.2d 150, 152 (2d Cir. 1984) (same). "Establishing a countervailing public policy that weighs against enforcement of an

arbitral award is a 'substantial' burden and requires the moving party to 'demonstrate a countervailing public policy sufficient to overcome [the] strong policy favoring confirmation.'" BCB Holdings Ltd. v. Gov't of Belize, 110 F. Supp. 3d 233, 250 (D.D.C. 2015), aff'd, 650 F. App'x 17 (D.C. Cir. 2016). "Such a public policy . . . must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. (quoting United Broth. of Carpenters & Joiners of Am., AFL–CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can., AFL–CIO, 721 F.3d 678, 697 (D.C. Cir. 2013)). "[A]lthough this defense is frequently raised, it has rarely been successful." Chevron Corp. v. Republic of Ecuador, 949 F. Supp. 2d 57, 69 (D.D.C. 2013), aff'd sub nom. Chevron Corp. v. Ecuador, 795 F.3d 200 (D.C. Cir. 2015) (citation and quotation marks omitted).

Here, Respondent relies on the alleged public policy against ignoring corporate formalities between entities and asserts that confirmation of the award would require an unwarranted piercing of the corporate veil. Petitioner, however, is not attempting to hold Respondent liable for the actions or omissions of its affiliate; rather, the award entered against Respondent is for Respondent's own breach of a contract to which it was a party. Thus, confirming the award does not in any way involve piercing the corporate veil or ignoring the fact that Alphysica Corp. and Respondent are separate entities.

Nonetheless, the appearance at the arbitration by attorneys appointed by Respondent's affiliate, rather than by Respondent itself, does raise the issue of whether Respondent was deprived of the opportunity to "present [its] case" under Art. V(1)(b) of the New York Convention. A party is unable to present its case at arbitration if it lacks the "opportunity to be heard at a meaningful time and in a meaningful manner." Research & Dev. Ctr., 182 F. Supp. 3d

at 565 (quoting Generica Ltd. v. Pharm. Basics, Inc., 125 F.3d 1123, 1129–30 (7th Cir. 1997)). This type of challenge "corresponds to a constitutional due process defense." Id.; see Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 298 (5th Cir. 2004) ("Article V(1)(b) 'essentially sanctions the application of the forum state's standards of due process.'" (quoting Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992))).

Even assuming, *arguendo*, that Respondent established that the applicable power of attorney was executed on behalf of Alphysica Corp. by Mr. Ryzhenko rather than on behalf of Respondent by Mr. Gornikel, Respondent nonetheless fails to demonstrate a violation of due process or a compelling public policy concern. Respondent received adequate and proper notice of the arbitration at the notice address that Respondent designated in the Outsourcing Agreement and was represented at the arbitration by counsel who meaningfully participated on Respondent's behalf.[5] Respondent has not raised any objection concerning the quality or effectiveness of its representation at the arbitration. Mr. Gornikel himself had retained the attorneys representing Respondent at the arbitration on other occasions. In 2013, he retained Ms. Malyshevskaya to represent Alphysica LLC in a Russian court case also against the Petitioner. Then, in October 2014, he extended Ms. Malyshevskaya's representation and additionally appointed Ms. Burdina to represent Alphysica LLC in that same Russian court action.[6] These same attorneys appeared before the ICAC on Respondent's behalf, submitted objections, and raised several substantive defenses that were addressed in the arbitrator's written decision. Respondent does not assert, and

---

[5] There is also no evidence that the appointment of Ms. Burdina or Ms. Malyshevskaya in any way prevented Respondent from having a corporate representative or other attorney attend the arbitration.

[6] The fact that Respondent was represented at the arbitration by attorneys that Mr. Gornikel apparently used with some regularity undercuts its claim that he had nothing to do with the power of attorney and by extension, the selection of counsel.

Mr. Gornikel did not testify, that the case presented at the arbitration was in any way deficient or prejudicial to Respondent's interests, nor is there any evidence that Respondent would have presented its case to the arbitrator any differently, had Alphysica Corp. not executed the power of attorney. Given that Respondent received adequate notice of the arbitration, that attorneys that Mr. Gornikel knew and previously retained appeared on his company's behalf, and that those attorneys, who were "duly authorized representatives" according to the arbitrator, fully presented Respondent's case without prejudicing its rights, Respondent fails to meet its burden to establish a violation of due process or public policy. Arbitration Award at 7; see Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F. Supp. 2d 1020, 1026–27 (S.D. Cal. 2000) (no due process violation where defendant failed to identify any "particular individual whose physical presence would have affected in any way the conduct or outcome of the proceedings, or whose absence prejudiced a full and fair hearing" and its representative "presented an apparently comprehensive defense"); In re Overseas Cosmos, Inc. & NR Vessel Corp., No. 97-cv-5898 (DC), 1997 WL 757041, at *4 (S.D.N.Y. Dec. 8, 1997) (rejecting defense that defendant did not appear in the foreign arbitration, did not appoint an arbitrator in that proceeding, and did not hire counsel to appear, where defendant was given "ample notice of the arbitration and an adequate opportunity to present its defenses" (citation omitted)); see also Jiangsu Hongtu High Tech Co. v. Apex Digital Inc., No. 08-cv-3102-GW(PLAX), 2009 WL 10675959, at *5 (C.D. Cal. Aug. 5, 2009) (inadequate grounds to refuse confirmation where defendant "has not articulated any misconduct by [plaintiff] . . . or the arbitration panel" and failed to adequately explain how the alleged misconduct prevented defendant from presenting its defense); cf. Calbex Mineral Ltd., 90 F. Supp. 3d at 459 ("In order to overcome the strong presumption in favor of enforceability under the New York Convention [defendant] must show there is evidence of record that [defendant]

was *prejudiced* by the [arbitration] panel's procedure."). Accordingly, there are no adequate grounds for vacating or refusing to confirm the award.

### III. CONCLUSION

For the foregoing reasons, Petitioner's motion for confirmation [ECF No. 31] is GRANTED and Respondent's motion to vacate [ECF No. 30] is DENIED.

**SO ORDERED.**

August 9, 2018                                                                 /s/ Allison D. Burroughs
                                                                                        ALLISON D. BURROUGHS
                                                                                        U.S. DISTRICT JUDGE